**In re C. Kenneth YOUNG and Suzanne C. Young, Debtors.**

**Bankruptcy No. 82–05501 T.**

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 3, 1984.

Darrell N. VanOrmer, Jr., Elizabethtown, Pa., for debtors.

Robert Jude Jennison, Harrisburg, Pa., for U.S.

Jeannine Turgeon, Harrisburg, Pa., for Commonwealth Nat. Bank.

Michael J. Connolly, Reading, Pa., for John Deere Co.

Frederick L. Reigle, Reading, Pa., Trustee.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

In this case, pursuant to the request of the Commonwealth National Bank ("Bank") for a determination of its secured status, we must determine the relative priorities of the security interests of three creditors in three items of the Chapter 13 debtors' personal property.[1] The three secured creditors are the Bank, the United States of America, acting through the Farmers Home Administration ("FHA"), and the John Deere Company ("John Deere"). The three items of personal property and their stipulated current fair market values are as follows: (1) tractor with loader, $7,500.00; (2) diesel tractor, $30,000.00; and (3) chisel plow, $4,500.00. All parties agree that John Deere has a priority purchase money security interest in the latter two items but has no interest at all in the tractor with loader. They also agree that John Deere's secured claim against the debtors is less than the combined value of the diesel tractor and the chisel plow. Therefore, we must determine whether the Bank or the FHA has a priority security interest in the tractor with loader and whether the Bank or the FHA has the second priority security interest to that of

1. This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

John Deere in the diesel tractor and the chisel plow. In short, the only disputed issue before us is the priority of the Bank's security interest in these three items vis-a-vis that of the FHA.

In December, 1977, in connection with the FHA's loan to the debtors, a security agreement and financing statement were duly executed, and the financing statement was properly filed under Pennsylvania law and properly continued in 1982. According to the security agreement, the collateral for the loan was, *inter alia,* all farm and other equipment now owned or hereafter acquired by the debtors, including the aforementioned tractor with loader. The 'financing statement contained the following description of the collateral: "Crops, livestock, supplies, other farm products and farm and other equipment."

During 1980, the debtors purchased the aforementioned diesel tractor and chisel plow. In July, 1981, the Bank acquired and perfected a 'nonpurchase money security interest in all three of the aforementioned items of the debtors' property.

■ The Bank, of course, concedes that its security interest post-dates the FHA's security interest. The Bank, however, makes two arguments as to why its security interest nevertheless has priority over the FHA's security interest. The Bank's first argument is that the FHA's security interest is not perfected with regard to the three items of property because the FHA's financing statement does not contain a sufficient description of the collateral. The Bank's argument is based upon its interpretation of 12A P.S. § 9–110 and 12A P.S. § 9–402(1), two former provisions of the Pennsylvania version of the Uniform Commercial Code, both of which are applicable to the facts of this case.

12A P.S. § 9–110 states:

"For the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

12A P.S. § 9–402(1) states, in part:

"A financing statement is sufficient if it ... contains a statement indicating the types, or describing the items, of collateral."

Specifically, the Bank argues that the phrase "farm and other equipment" in the FHA's financing statement is too vague to reasonably identify the three items of property at issue herein as part of the FHA's collateral. Therefore, continues the Bank, the financing statement is defective under 12A P.S. § 9–110 and 12A P.S. § 9–402(1) and, thus, cannot give the FHA's security interest priority over that of the Bank in these three items. The Bank's argument finds support in the case of *Mammoth Cave Production Credit Association v. York,* 429 S.W.2d 26 (Ky.Ct.App.1968).[2] In *Mammoth Cave,* the Court held that the phrase "all farm equipment" in a secured creditor's financing statement was, under § 9–110 of the Uniform Commercial Code (Kentucky version), an insufficiently vague description of collateral in relation to a tractor. *Mammoth Cave,* however, has been rejected, explicitly or implicitly, by the overwhelming weight of authority. For example, in *United States v. Crittenden,* 600 F.2d 478 (5th Cir.1979), the Court held that the phrase "farm equipment" in a secured creditor's financing statement was, under § 9–110 of the Uniform Commercial Code (Georgia version), a sufficient description of collateral in relation to a tractor. The Court reasoned that the phrase "farm equipment" in the financing statement clearly waves a warning flag above the borrower's tractor and would sufficiently alert a person of ordinary business prudence to engage in further inquiry as to the prior secured creditor's collateral.

In *Midkiff Implement Co. v. Worrall,* 116 Ill.App.3d 546, 71 Ill.Dec. 655, 451 N.E.2d 623, 36 U.C.C.Rep. 963 (1983), the phrase "all ... farm machinery and equip-

---

**2.** This case and all of the other cases cited *infra* involve state-adopted versions of the Uniform Commercial Code which are identical to the Pennsylvania version as to 12A P.S. § 9–110 and 12A P.S. § 9–402(1), *supra.*

ment" in a security agreement was held to satisfy § 9–110 of the Uniform Commercial Code (Illinois version) in relation to a hay baler, a forage pickup, a bale carrier, and a hay rake.

*Matter of Wiskur*, 31 B.R. 39 (Bankr.W. D.Mo.1983), concerned an FHA financing statement which contained the identical phrase—"farm and other equipment"—that is at issue in the present case. The Court held that this phrase satisfied § 9–110 and § 9–402(1) of the Uniform Commercial Code (Missouri version) as to any of the debtor's property which would fit within the generic description of "farm equipment". In doing so, the Court specifically declined to follow *Mammoth Cave*. 31 B.R. at 41. For a similar case, see *United States v. First Nat'l Bank*, 470 F.2d 944, 947 (8th Cir.1973), in which the Court also specifically declined to follow *Mammoth Cave's* interpretation of § 9–110 of the Uniform Commercial Code.[3] Also see *Matter of H.L. Bennett Co.*, 588 F.2d 389 (3rd Cir.1978), the reasoning of which, although involving a much different financing statement from that in the present case, would tend to support the FHA on this issue.

In accordance with the reasoning of the above-cited cases and commentators, we find that the phrase "farm and other equipment" in the FHA's financing statement is not too vague to reasonably identify the three items of property at issue herein as part of the FHA's collateral within the meaning of 12A P.S. § 9–110 and 12A P.S. § 9–402(1), particularly in light of the "notice filing" concept of the Uniform Commercial Code. See the Uniform Commercial Code Official Comments following 12A P.S. § 9–402(1). Thus, the FHA's security interest is not unperfected on this basis, and we reject this first argument by the Bank.

■ However, notwithstanding our rejection of the Bank's first argument, we agree with the Bank's second contention

that the FHA's security interest is unperfected and thus of lesser priority than the Bank's security interest as to the two items of property which the debtor acquired subsequent to the attachment of the FHA's security interest. These two items of "after-acquired property" are the diesel tractor and the chisel plow. Although the FHA's security agreement contained an after-acquired property clause, its financing statement did not. In this regard, we are bound by the decision of our Third Circuit Court of Appeals in *In re Middle Atlantic Stud Welding Co.*, 503 F.2d 1133 (3rd Cir. 1974), which held, pursuant to the identical provisions of the Uniform Commercial Code as apply to the present case, that a secured party obtains no security interest, as against third parties, in the debtor's accounts receivable acquired after execution of a security agreement and filing of a financing statement absent an explicit declaration of such interest's creation in both the security agreement and financing statement. The Court's reasoning applies with equal force to any type of after-acquired property, and not just to after-acquired accounts receivable. The FHA has not contended otherwise. Rather, the FHA argues that *In re Middle Atlantic Stud Welding Co.* is not applicable to the present case because it involved only the issue of the adequacy of a security agreement and not the issue of the adequacy of a financing statement. However, in this regard, the FHA has simply misread the case and its argument must be rejected.

For all of the foregoing reasons, we conclude that the FHA's security interest has priority over the Bank's security interest in the aforementioned tractor with loader. We also conclude that the Bank's security interest has priority over the FHA's security interest in the diesel tractor and the chisel plow.

**3.** For further criticism of *Mammoth Cave's* interpretation of § 9–110, see Note, Agricultural Financing Under the U.C.C., 12 Ariz.L.Rev. 391, 394 (1970); Note, Description of Collateral in a Financing Statement: Should It Be Required? 4 Valparaiso U.L.Rev. 205, 216 (1969); B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code, Section 2.9.[5][c], at 2–44, 2–45 (1980).