**In re Gregory L. MACK, Debtor.**

**Phillip D. ARMSTRONG, Trustee of the Estate of Gregory L. Mack, Plaintiff,**

v.

**Emanuel MACK, Joe Mack, Donald Alexander, and Velva Community Credit Union, Defendants.**

Bankruptcy No. 87–05662.

Adv. No. 88–7034.

United States Bankruptcy Court, D. North Dakota.

Sept. 29, 1988.

Phillip D. Armstrong, Minot, N.D., for trustee.

Mark Larson, Minot, N.D., for Velva Community Credit Union.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This case arises by complaint filed April 4, 1988, by which the trustee, pursuant to sections 544 and 547 of the United States Bankruptcy Code, seeks to avoid the liens of defendants Emanuel Mack, Joe Mack, Donald Alexander, and Velva Community Credit Union (Credit Union). Only the Credit Union interposed an answer and has agreed with the trustee that the case may be decided upon stipulated facts. A Stipulation of Facts and Waiver of Trial was jointly filed by the trustee and the Credit Union on August 12, 1988. The non-answering defendants are not a party to this stipulation. The facts as gleaned from the stipulated facts and documents submitted are as follows:

### Findings of Fact

At all times material the Debtor, Gregory L. Mack, was a farmer maintaining his

residence in Pierce County, North Dakota. In 1986 he grew crops upon land situated in Pierce County. These crops have now been sold with $33,064.48 in proceeds turned over to the trustee who, by virtue of his status, seeks to avoid the security interest claimed by the Credit Union.

On December 23, 1985, the Debtor, in consequence of a $41,450.00 loan, signed a security agreement extending to the Credit Union a security interest in "all crops now growing or to be grown". Beyond this quoted statement, the security agreement is completely devoid of any other property description. Thereafter, a financing statement was prepared to cover the security interest taken in the 1986 crops and proceeds. The financing statement provides a much more complete land description including section, range and township. The financing statement on the line provided for denoting place of filing, has the box, "Register of Deeds _____ County" checked but then contains, in the space intended for writing in the county name, the word "McHenry" crossed out and the word "Pierce" written in. The financing statement was filed in McHenry County on March 31, 1986. On May 11, 1987, the same financing statement was filed in Pierce County, the county of the Debtor's residence.

The Debtor filed for relief under Chapter 7 on July 23, 1987, some 73 days after the filing in Pierce County.

### Conclusions of Law

The trustee, armed with section 544 avoidance powers, first of all asserts that the Credit Union's security interest is legally insufficient because it fails to contain a land description as required by N.D.Cent. Code § 41–09–16(1)(a) (U.C.C. § 9–203(1)(a)). As a second cause of action he charges that the original financing statement although filed outside the ninety-day preference period was filed in the wrong county necessitating a second corrective filing in McHenry County which occurred within ninety days of the bankruptcy filing and thus constituted a prefer-

ential transfer within the meaning of section 547.

Two provisions of the North Dakota Century Code specifically provide that when a security interest is intended to cover crops growing or to be grown the documents must include a description of the real estate. N.D.Cent.Code § 41–09–16(1)(a) (U.C. C. § 9–203(1)(a)) provides that a security interest does not attach and is not enforceable against a debtor or a third party unless:

> (a) [T]he debtor has signed a security agreement that contains a description of the collateral and, in addition, if the security interest covers crops growing or to be grown or timber to be cut, *a description of the land concerned.*

Likewise, N.D.Cent.Code § 41–09–41(1) (U.C.C. § 9–402(1)) setting forth the formal requirements of a financing statement provides:

> When the financing statement covers crops growing or to be grown, the statement must also contain *a description of the real estate concerned.*

The description required by these two sections need not be a legal description so long as it reasonably identifies the land involved. *See* N.D.Cent.Code § 41–09–10 (U.C.C. § 9–110). *U.S. v. First National Bank in Ogallala,* 470 F.2d 944 (8th Cir. 1973); *Farmers Nat. Bank of Danville, Kentucky v. Bank of Danville,* 29 U.C.C. Rep. 1020 (Ky.1980); *In re Lovelady,* 21 B.R. 182 (Bankr.Or.1982). The court has no trouble concluding that the Credit Union's financing statement contains a description sufficient to meet the requirement of N.D.Cent.Code § 41–09–41(1). Just as plainly, however, the court has no trouble concluding that the security agreement itself is completely deficient and when taken by itself does not meet the description requirement of N.D.Cent.Code § 41–09–16(1)(a). The question then becomes whether a security agreement lacking in the formal requisites for enforceability may be salvaged by reference to a financing statement that does contain a land description meeting the requirements of N.D.Cent.Code § 41–09–41(1).

At this juncture it must be remembered that a financing statement is merely evidence of the security agreement and that it is the security agreement itself which creates or provides for the security interest. *See* N.D.Cent.Code § 41–09–05(1)(*l*) (U.C.C. § 9–105(1)(*l*)); *Thorp Commercial Credit Corp. v. Northgate Industries, Inc.,* 654 F.2d 1245 (8th Cir.1981); *In re Nelson,* 45 B.R. 443 (Bankr.N.D.1984). If the security agreement fails in the *first place* to contain those statutory elements prerequisite to attachment it is unenforceable.

This court has in the past noted that courts generally are reluctant to allow imprecise language on a security agreement to create a valid security interest. In *In re Wolsky,* 68 B.R. 526, 528 (Bankr.D.N.D. 1986), it was said:

> Although a general collateral description in a financing statement may be sufficient to put a third party on notice, and thus perfect a security interest, greater particularity is required for a description of collateral in a security agreement. (citations omitted). The issue of perfection does not even arise until one first establishes that a valid security interest has attached. 68 B.R. at 528.

The requirement for a real estate description is regarded by the great majority of courts as mandatory under both U.C.C. § 9–203 and § 9–402. Annotation, *Sufficiency of Description of Crops, Under U.C.C. § 9–203(1)(d) and § 9–402(1),* 67 A.L.R.3rd 308. The Fourth Circuit in a recent case held that when the collateral consists of growing crops both the security agreement and the financing statement must comply with the plain requirements of these two U.C.C. sections. *United States v. Smith,* 832 F.2d 774 (2nd Cir. 1987). Regarding the plain requirements of the U.C.C. sections, our own Circuit in *Shelton v. Erwin,* 472 F.2d 1118 (8th Cir. 1973) in discussing U.S.C. § 9–203, said that the Code is not ambiguous on the requirements necessary to the creation of a security interest and there is no reason to relax the requirements. In this posture, courts have decided that a deficient land description in a security agreement cannot be corrected by a statutorily sufficient financing statement. An existing statutory deficiency in a security agreement cannot be corrected by a financing statement because the financing statement does not create the security interest but, rather is merely evidence of it. *Smith, supra; Centerre Bank National Ass'n. v. Missouri Farmers Ass'n., Inc.,* 716 S.W.2d 336 (Mo. Ct.App.1986); *In re Coody,* 59 B.R. 164 (Bankr.M.D.Ga.1986).

The only case supporting a contrary result is *W.F.J., Inc. v. Bank of Tioga,* 605 F.Supp. 39 (D.C.N.D.1984) where the court, without citing to any authority, said that a security agreement deficient in collateral description can be examined together with the financing statement to determine the sufficiency of description. This position does not stand up against the weight of case law and suggests what N.D.Cent.Code § 41–09–16(1)(a) does not—that a financing statement may supplant the prerequisite requirements necessary for a security agreement to attach and become enforceable. The Eighth Circuit in *Shelton* plainly said that the requirements necessary to the *creation* of a security interest are unambiguous. A financing statement does not create a security interest. Only the security agreement can do that and when the security agreement is statutorily deficient it is ineffective. This is not to say that a deficient description borne on the face of a security agreement cannot be clarified and the statutory requirement thereby satisfied by reference to documents or schedules *attached* to the security agreement. The attached document may even be the financing statement itself. In the case of *In re Nickerson & Nickerson, Inc.,* 452 F.2d 56 (8th Cir.1971), it was held that the effect of attaching a more detailed financing statement as an exhibit to the otherwise description—defective security agreement operates to incorporate the clarifying language of the financing statement into the security agreement, thus satisfying the requirements of U.C.C. § 9–203. The security agreement presently before the court does not contain any land description whatsoever and for this reason the court holds it is unenforceable ab initio. The court does not

believe in the face of the plain requirement of section 41–09–16(1)(a), that the land description requirement can be met by reference to a later financing statement.

By section 544(a) of the Bankruptcy Code, commonly called the "strong arm" provision, a trustee assumes the status of a lien creditor as of the time of filing. Under this section, his avoidance power as a hypothetical lien creditor comes into existence as of the date of filing and as such operates to avoid any transfer that was incomplete or unperfected as of that date. Because the Credit Union's security interest is unenforceable and did not attach due to the omission of a land description, it was at the time of the Chapter 7 petition subject to being avoided by the trustee. Its claimed security interest in the 1986 crop proceeds is inferior to that of the trustee.

Having reached a decision based upon section 544(a), it is unnecessary to resolve the question of whether the subsequent financing statement constituted a preferential transfer.

For the reasons stated, IT IS ORDERED that the plaintiff, Phillip D. Armstrong, trustee of the estate of Gregory L. Mack, be awarded judgment against the defendant Velva Community Credit Union as follows:

The security interest of the Velva Community Credit Union is unenforceable as against the trustee and the trustee is entitled to the proceeds of the 1986 crop free of any claim of the Credit Union.

JUDGMENT MAY BE ENTERED ACCORDINGLY.

### JUDGMENT

IT IS ORDERED AND ADJUDGED: that the plaintiff, Phillip D. Armstrong, trustee of the estate of Gregory L. Mack, be awarded judgment against the defendant, Velva Community Credit Union as follows: The security interest of the Velva Community Credit Union is unenforceable as against the trustee and the trustee is entitled to the proceeds of the 1986 crop free of any claim of the Credit Union.